IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHERYL HURD, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TARRANT COUNTY HOSPITAL | § | Civil Action No. 4:22-cv-00388-O |
| DISTRICT, et al. | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFF'S
SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
Alexandra Mosser
State Bar No. 24107297
amosser@canteyhanger.com

**CANTEY HANGER LLP**
Cantey Hanger Plaza
600 W. 6th St., Suite 300
Fort Worth, TX 76102
(817) 877-2800 (phone)
(817) 877-2807 (fax)

**COUNSEL FOR DEFENDANTS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Tarrant County Hospital District d/b/a JPS Health Network and John Peter Smith Hospital ("JPS") and Acclaim Physician Group ("Acclaim") (collectively, "Defendants") move to dismiss the stigmatization claims asserted against them by Plaintiff Cheryl Hurd, M.D. ("Dr. Hurd" or "Plaintiff") in Plaintiff's Second Amended Complaint (ECF No. 23) ("Second Amended Complaint").

## INTRODUCTION

As the Court is aware, this case arises out of Defendants' removal of Dr. Hurd from two leadership positions that she held within JPS's Psychiatry Department. On August 6, 2022, this Court entered an Order (ECF No. 22) that granted in part and denied in part Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 9). In relevant part, the Court concluded that Dr. Hurd had not stated a plausible stigmatization claim and therefore dismissed Dr. Hurd's stigmatization-based § 1983 claims.[1] The Court, however, granted Dr. Hurd leave to re-plead her stigmatization claims to attempt to cure the pleading deficiencies.

Thereafter, Dr. Hurd filed her Second Amended Complaint, which re-asserts her stigmatization claims and includes a few additional (though inconsequential) factual details in support. Because the Second Amended Complaint does not remedy the pleading deficiencies that the Court identified in its August 6 Order and otherwise fails to state a plausible stigmatization claim, Defendants move the Court to, once again, dismiss Dr. Hurd's stigmatization-based § 1983 claims.

---

[1] The Court denied Defendants' motion insofar as Defendants argued that Dr. Hurd had not pled a constitutionally protected property right to hold the two departmental leadership positions from which she was removed. The Court also denied Defendants' motion insofar as it sought dismissal of Plaintiff's claim for breach of her employment agreement. Defendants do not challenge those rulings in this motion.

**FACTUAL ALLEGATIONS**

According to the Second Amended Complaint, in 2017, Plaintiff was selected as the Psychiatry Residency Program Director. (Second Am. Compl. ¶ 5.9). In 2020, Plaintiff was appointed to serve as the Vice Chair of Education in the JPS Psychiatry Department. (*Id.* ¶ 5.13).

Plaintiff alleges that on December 8, 2021, she attended a scheduled monthly Zoom meeting with two advanced practitioners she supported in her role as Fellowship Director. (*Id.* ¶ 5.18). During this Zoom call, one practitioner shared with Plaintiff about a divorce proceeding in which she was involved. (*Id.* ¶ 5.19). Knowing that the practitioner was dating an African-American individual and believing that court officials tend to "conduct their affairs in what could be perceived as a racially insensitive manner," Plaintiff "advised the practitioner to proceed with caution and care." (*Id.* ¶ 5.19). Plaintiff states the practitioner agreed and was appreciative of Plaintiff's concern. (*Id.*).

Plaintiff alleges that Teresa Morgan ("Morgan") from the JPS Human Resources office contacted her on December 30, 2021, regarding a complaint of racist behavior on the part of Plaintiff. (*Id.* ¶ 5.20). According to Plaintiff, "[t]he complaint to JPS HR stated that Plaintiff was 'overheard' making racist comments during the Zoom meeting on December 8." (*Id.*). Plaintiff spoke to Morgan that day to provide context for the Zoom meeting and to clarify that her statements during the meeting were meant to be "the exact opposite of racism." (*Id.*). It was "others who might be racist, themselves"—not Plaintiff. (*Id.*). At the request of Morgan, Plaintiff provided a written statement about the Zoom meeting and her comments on January 12, 2022. (*Id.* ¶ 5.21).

Plaintiff alleges that "[n]othing transpired with the complaint or otherwise for two months" until she was called into a meeting on March 18, 2022 and "summarily removed" from her roles

1

as JPS Health Network Psychiatry Residency Program Director and Psychiatry Department Vice Chair of Education.  (*Id*. ¶¶ 5.22, 5.23).  Plaintiff's direct supervisor Dr. Alan Podawiltz "told her the reasons for her demotion were 'hostile work environment' and 'you no longer represent the values of Acclaim' (the JPS-Affiliated Physician Practice Group)."  (*Id*. ¶ 5.24)

Later that month, Dr. Tricia Elliot "held a vote at the Graduate Medical Education Committee meeting to officially install Dr. DeMoss as the Psychiatry Residence Program Director."  (*Id*. at ¶ 5.42).  Dr. Elliott serves as "the JPS Senior Vice President for Academic and Research Affairs and the Chief Academic Officer" and was Plaintiff's "only other director supervisor."  (*Id*. ¶ 5.31).

Significant, in Plaintiff's view, is that Plaintiff's demotion occurred "one hour prior to 'Match Day' results being released."  (*Id*. ¶ 5.30).  Less than an hour after the meeting at which Plaintiff was removed from the two departmental leadership positions, Dr. Podawiltz allegedly sent a department-wide email announcing Plaintiff's demotion and the promotion of Dustin DeMoss, M.D. ("Dr. DeMoss") as her replacement.  (*Id*. ¶ 5.32).  An hour after that, Dr. Podawiltz announced these changes on a weekly Zoom call "at Psychiatry Department Grand Rounds."  (*Id*. ¶ 5.33).  Plaintiff asserts that the timing and speed at which this change in leadership was communicated "show[s] a premeditated intent to discredit and defame Plaintiff and her reputation as well as inflict mental anguish."  (*Id*. ¶ 5.34).

Later that afternoon, "Dr. Podawiltz held a meeting with all of the residents in the psychiatry program who were available."  (*Id*. ¶ 5.36).  Plaintiff alleges that Dr. Podawiltz "informed them of Plaintiff's demotion and Dr. DeMoss' promotion to the position of Psychiatry Residence Program Director."  (*Id*.).  In response to questions from residents about the reason for Plaintiffs' demotion, Dr. Podawiltz allegedly was evasive, but "at one point may have stated 'we're

2

taking the program in a different direction' and 'I can't tell you why.'" (*Id.*). Dr. Podawiltz also allegedly "stated there were very solid grounds for the demotion, but that he would not share specifics." (*Id.*).

According to Plaintiff, "[s]tatements also came from officials for the Defendants." (*Id.* ¶ 5.36). Plaintiff alleges that "Dr. James Haliburton, on or about April 1, 2022, told residents and other persons present in the psychiatry consultation room that Plaintiff was a 'narcissist' and 'toxic.'" (*Id.* ¶ 5.36(a)). At that time, "Dr. Haliburton was (1) Defendant Acclaim's Medical Director, Consultation/Liaison Service, Department of Psychiatry and Behavioral Health, and (2) the Associate Program Director, for Defendant JPS's Psychiatry Residency." (*Id.* ¶ 5.26(b)).

Plaintiff alleges that Defendants stigmatized her in the process of removing her from the two departmental leadership roles and that Defendants "violated Plaintiff's civil rights . . . by stigmatizing her reputation." (Second Am. Compl. ¶¶ 5.52, 6.7).

## ARGUMENT AND AUTHORITIES

### A.     Legal Standard

"Under the Federal Rules of Civil Procedure and relevant precedent, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Courts "take the well-pleaded factual allegations in the complaint as true, but [courts] do not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Id.* (citing *Iqbal*, 556 U.S. at 678).

3

**B.       Plaintiff has failed to state a plausible stigmatization claim under § 1983.**

"[T]here is 'no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.'"  *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) (quoting *Paul v. Davis*, 424 U.S. 693, 702 (1976)).  To prevail on a stigmatization claim, "the plaintiff must prove that the stigma was caused by a *false* communication." *Id.* at 936.  This requires showing that "a state actor has made concrete, *false* assertions of *wrongdoing on the part of the plaintiff*." *Id.*; *Wells v. Hico ISD*, 736 F.2d 243 n.16 (5th Cir. 1984), *cert denied*, 473 U.S. 901 (1985).  The statement also must be public.  *See Ghedi v. Mayorkas*, 16 F.4th 456, 467–68 (5th Cir. 2021).

In its August 6 Order, the Court noted several statements that Plaintiff had identified as meeting these requirements, but the Court concluded that, "even taking the facts in the light most favorable to Plaintiff, each statement falls short." Order (ECF No. 22), at 7.  The Second Amended Complaint identifies no new statements and otherwise fails to remedy the pleading defects that the Court identified in its August 6 Order.

First, the Court concluded that "Dr. Podawiltz's statements that Plaintiff was demoted because Defendants are 'taking the program in a different direction,' and Dr. Podawiltz's statement ("I can't tell you why" when questioned about the demotion) would not give rise to a 'badge of infamy' as required." *Id.* (citing Am. Compl. 14).  The Court likewise concluded that these statements did not "amount to a 'concrete, false assertion of wrongdoing" and that "Dr. Podawiltz's statement that 'there were very solid grounds for the demotion, but that he would not share specifics' similarly falls short." *Id.* (citing Am. Compl. 14).  Therefore, these allegations, which are made again in the Second Amended Complaint, are insufficient to state a plausible stigmatization claim.

4

Second, the Court concluded that "Plaintiff's pleadings that 'others' called Plaintiff 'toxic' and a 'narcissist' are insufficient." *Id*. The Court observed that "stating someone is 'toxic' is a statement of opinion, not a 'concrete, false assertions of wrongdoing on the part of the plaintiff' as required. *Id*. (citing *Blackburn*, 42 F.3d at 936). The Court further observed that, although calling Plaintiff a "narcissist" could conceivably be a concrete, false assertion, Plaintiff had 'not alleged that she was called a narcissist or toxic in a public manner that would give rise to a 'badge of infamy' or 'public scorn.'" *Id*. at 8. Plaintiff also had not identified who said she was toxic and a narcissist and whether that person was a state actor. *See id*.

Plaintiff's Second Amended Complaint does not remedy these deficiencies. For starters, the term "toxic" is, as the Court already determined, a statement of opinion and cannot support a stigmatization claim. With regard to the alleged "narcissist" remark, Plaintiff still fails to allege facts showing that Plaintiff was called a narcissist in a public manner that would give rise to a badge of infamy or public scorn. Even drawing all reasonable inferences in Plaintiff's favor, it is evident from the context of Plaintiff's allegations that the alleged "narcissist" remark was a colloquial reference. Plaintiff alleges that this term has "professional and diagnostic meaning," Second Am. Compl. ¶ 5.36(a), but there are no factual allegations from which it may reasonable be inferred that anyone ever said or implied that Plaintiff had been diagnosed with narcissistic personality disorder.

In the Second Amended Complaint, Plaintiff makes the newly added allegation that "other persons" were present in the consultation room. (Second Am. Compl. ¶ 5.36). She drops a footnote alleging that there was a resident from Medical City Fort Worth scheduled to attend the consultation service and that nurse- practitioner students from UT Arlington routinely rotated on the service and "may also have been present." (*Id.* ¶ 5.36 n.2). But these minor additions do not

5

upgrade Plaintiff's stigmatization claims to "plausible" status, as they still do not show that Plaintiff was called a narcissist in a "public manner that would give rise to a badge of infamy or public scorn." Order 8.

In addition, the Second Amended Complaint, like its predecessor, fails to allege facts establishing that the "toxic" and "narcissist" remarks are attributable to Defendants. *See Hughes v. City of Garland*, 204 F.3d 223, 227 (5th Cir. 2000) (noting that the "public disclosure must be fairly attributable to the defendant employer"). The Second Amended Complaint includes the identity of the alleged speaker, Dr. James Haliburton, which was missing from the First Amended Complaint. (Second Am. Compl. ¶ 5.36(a)). Plaintiff alleges that Dr. Haliburton was Acclaim's "Medical Director, Consultation/Liaison Service, Department of Psychiatry and Behavioral Health," and "the Associate Program Director" for JPS's Psychiatry Residency. (*Id.* ¶ 5.36(b)). But the Second Amended Complaint does not allege facts indicating that Defendants sanctioned Dr. Haliburton's comments and that Dr. Haliburton made these comments on behalf of Defendants, as opposed to simply giving his own personal opinion. *See Blackburn*, 42 F.3d at 936 n.10 ("A prerequisite to raising a liberty interest claim based on stigma is that the statement be made public *by the defendant*.") (emphasis added). In other words, the allegations in the Second Amended Complaint cannot support a reasonable inference that Dr. Haliburton was speaking for Defendants when he described Plaintiff as "toxic" and "a narcissist." Second Am. Compl. ¶ 5.36(a).

## **CONCLUSION**

Based on the foregoing, Defendants move the Court under Rule 12(b)(6) to dismiss with prejudice Plaintiffs' stigmatization claims.

6

Respectfully submitted,

Jordan M. Parker
State Bar No. 15491400
jparker@canteyhanger.com
Derek Carson
State Bar No. 24085240
dcarson@canteyhanger.com
Alexandra Mosser
State Bar No. 24107297
amosser@canteyhanger.com
CANTEY HANGER LLP
Cantey Hanger Plaza
600 W. 6th St., Suite 300
Fort Worth, TX 76102
(817) 877-2800 (phone)
(817) 877-2807 (fax)

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of this pleading was served on all counsel of record via this Court's ECF system on August 22, 2022.

Derek Carson

7